IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| SHARON BINGHAM, § | |
| § | |
| Plaintiff, § | |
| § | |
| vs. § | Civil Action No. 6:04-CV-045-C |
| § | ECF |
| § | Referred to the U.S. Magistrate Judge |
| JO ANNE B. BARNHART, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the court upon Plaintiff's complaint filed July 28, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff filed a brief in support of her complaint on March 18, 2005, Defendant filed her brief on April 11, 2005, and Plaintiff filed her reply on May 23, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

I. **STATEMENT OF THE CASE**

Plaintiff filed an application for a period of disability and disability insurance benefits on December 18, 2001, alleging disability beginning January 19, 1994. Tr. 10. Plaintiff's application

was denied initially and upon reconsideration. Tr. 31-34, 37-41. Plaintiff filed a Request for Hearing by Administrative Law Judge on July 16, 2002, and this matter came for hearing before the Administrative Law Judge ("ALJ") on December 15, 2003. Tr. 10, 29, 320-34. Plaintiff, represented by a non-attorney, testified in her own behalf. Tr. 322-31. Todd Harden, a vocational expert ("VE"), appeared and testified as well.[1] Tr. 331-34. The ALJ issued a decision unfavorable to Plaintiff on January 27, 2004. Tr. 7-18.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. He found that Plaintiff met the disability insured status requirements only through December 31, 2000, and that onset of disability must be established on or before that date. Tr. 10. The ALJ noted that Plaintiff's work activities subsequent to January 19, 1994, constituted unsuccessful work attempts. Tr. 11. He therefore found that Plaintiff had not engaged in substantial gainful activity at any time since January 19, 1994. *Id*. The ALJ found that Plaintiff has "severe" impairments, including neck pain, status post cervical fusion, and bilateral carpal tunnel syndrome, status post release. Tr. 12, 17. He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id*. The ALJ thereafter considered whether Plaintiff retained the residual functional capacity ("RFC") to perform her past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social

---

[1] The transcript of the ALJ hearing indicates that the VE who appeared and testified was Todd Hardan. Tr. 331-34. In his decision, the ALJ indicated that the VE who appeared and testified at the hearing was Beth Maxwell. Tr. 10.

Security Ruling 96-7p and 20 C.F.R. § 404.1529. Tr. 12. The ALJ discussed the evidence in the record indicating that Plaintiff slipped and fell at work. *Id*. He noted that she was treated by a neurologist in February 1994 who diagnosed a mild but painful left C7 radiculopathy and prescribed medication and physical therapy. *Id*. He noted evidence indicating degenerative changes at C5-C6 and an anterior extradural defect at C6-7. *Id*. He noted that Plaintif underwent anterior cervical fusion at C5-6 and C6-7 in May 1994. The ALJ indicated that Plaintiff was examined for a maximum medical improvement rating in January 1995 and was assessed a 16% whole person impairment. *Id*.

The ALJ noted Plaintiff's further treatment for pain and the indication by Dr. Paul C. Buechel that she could return to work part-time. Tr. 13. He noted Plaintiff's subsequent reports of pain and treatment for carpel tunnel syndrome, as well as for depression. *Id*. He also discussed the results of Plaintiff's various EMG/nerve conduction studies. *Id*. He noted Plaintiff's treatment by Dr. John D. Hunt, an oncologist, and by Dr. Robert H. LeGrand, a neurosurgeon. Tr. 14. The ALJ also discussed Plaintiff's testimony and reports of her limitations. *Id*.

The ALJ found that Plaintiff did not have a "severe" medically determinable mental impairment. Tr. 15. He indicated that he recognized that Plaintiff may experience some degree of pain or discomfort at times of overexertion but noted that even a moderate level of pain, standing alone, is not incompatible with the performance of certain levels of sustained work activity. *Id*. The ALJ found that based on the evidence in the record, Plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible. Tr. 17.

The ALJ found that Plaintiff could not return to her past relevant work as a candy wrapper, a sandwich maker, or a waitress. Tr. 16-17. He noted that Plaintiff was considered an individual "closely approaching advanced age" with a limited 10th grade education. 20 C.F.R. §§ 404.1563, 404.1564. Tr. 10, 16-17.

The ALJ found that Plaintiff retained the RFC to perform, on a continuing and sustained basis, light work activity, limited to jobs that do not require prolonged repetitive use of the hands or fine finger manipulation and that allow for opportunities to alternate sitting and standing at frequent intervals.  Tr. 17.  Having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite her severe impairments.  Tr. 16, 331-34.  The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of photo counter clerk, with 1,500 jobs in Texas and 15,000 nationally. *Id*.  The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date her insurance status expired on December 31, 2000.  Tr. 17-18.

Plaintiff submitted a Request for Review of Hearing Decision/Order on April 1, 2004.  Tr. 6.  The Appeals Council issued its opinion on May 25, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request.  Tr. 3-5.  The ALJ's decision, therefore, became the final decision of the Commissioner.

On July 28, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g).  The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir.

-4-

2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because she retained the ability to perform work in the national economy. Tr. 17-18.

### III.   DISCUSSION

Plaintiff claims that the ALJ erred in two respects. First, she argues that the ALJ's step 3 determination that her severe impairments, neither singularly nor in combination met or medically equaled a listing in the Listing of Impairments, is not supported by the opinion of a state agency medical consultant ("SAMC") or other program physician as required by Social Security Ruling 96-6p (July 2, 1996)("SSR 96-6p). Plaintiff further argues that the ALJ erred at step 5 by relying on

the testimony of the VE where the ALJ and VE failed to establish a reliable foundation for his opinion that the job identified, photo counter clerk, afforded the opportunity to alternate between sitting and standing.

**A.    Whether the ALJ erred in finding that Plaintiff's impairments did not meet or equal an impairment in the Listing of Impairments.**

Plaintiff argues that the ALJ erred in making his determination that Plaintiff's impairments did not meet or medically equal an impairment in the Listing of Impairments. Plaintiff argues that SSR 96-6p requires that the judgment of a physician is necessary on the issue of medical equivalency.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Social Security Rulings are agency rulings "published under the authority of the Commissioner of Social Security and are binding on all components of the Administration." 20 CFR § 422.408 (1980); *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); *Hall v. Schweiker*, 660 F.2d 116, 119 n.4 (5th Cir. [Unit A] 1981)(*per curiam*). An agency must follow its own procedures, even if those procedures are more rigorous than what would otherwise be required. *Newton*, 209 F.3d at 459. Should the agency violate its internal rules and prejudice results, the proceedings are tainted and any action taken cannot stand. *Hall*, 660 F.2d at 119.

As described in SSR 96-6p, the ALJ or the Appeals Council is responsible for deciding the ultimate legal question of whether a listing is met or equaled. SSR 96-6p. While the ALJ or Appeals Council is responsible for the decision of medical equivalency, "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the

issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight." *Id*.

These state agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, and the ALJ should consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. *Id*. However, the ALJ is not bound by the findings of the SAMCs as to whether an individual's impairment is equivalent in severity to any impairment in the Listing of Impairments. *Id*.

SSR 96-6p further provides that the signature of an SAMC on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. *Id*.

The parties agree that the SAMCs in this case signed SSA-831 forms, one on March 29, 2002 (SAMC Cleland), and one on May 16, 2002 (SAMC Spoor). Tr. 19-20. However, Plaintiff argues that the SAMCs in this case did not render a medical judgment as to medical equivalence because both indicated that the evidence available for their review was insufficient and both indicated that they found Plaintiff not disabled at step 2 and therefore did not proceed to the step 3 determination. Plaintiff notes that as described in Section DI 27015.095B of the Social Security Program Operations Manual ("POMS"),[2] the reg-basis code F2-1520(c) indicates that the claim was denied for lack of a "severe impairment." The record demonstrates that SAMC Spoor indicated at the

---

[2]   The POMS may be found online at http://policy.ssa.gov/poms.nsf/aboutpoms. Section DI 27015.095B is found at http://policy.ssa.gov/poms.nsf/lnx/0427015095!opendocument.

reconsideration level that the prior determination denying Plaintiff's claim should be affirmed. Tr. 19. The SAMCs further recommended a technical denial on the TRC-817 form because there was insufficient medical evidence of record to fully address all of Plaintiff's allegations. Tr. 266. This form was completed on March 29, 2002, the date of the initial denial.

Plaintiff argues that the SSA-831 forms signed by the SAMCs in this case are insufficient because they determined that Plaintiff was not disabled at step 2 (i.e., finding that Plaintiff's impairments are not severe). She argues that SSR 96-6p requires an opinion as to medical equivalence. As such, she argues that the step 2 determination by the SAMCs is insufficient because the medical equivalence finding is made at step 3, and she argues that a medical equivalence finding by an SAMC or medical expert ("ME") is required at step 3.

A review of the applicable POMS section, DI 27015.095B, demonstrates that the codes provided do not allow for an equivalence determination which is a denial. For example, code B1-1520(d) may be entered in Box 22 for allowance of a claim based on medical equivalence (i.e., the impairments equal a listing). Section DI 22001.005 provides that "when a decision that an individual is or is not disabled can be made at any step, evaluation under a subsequent step is unnecessary." Therefore, if the SAMCs opine that the claimant does not have severe impairments, they would not be required to proceed to step 3 and evaluate whether the claimant's impairments medically equal a listing. By definition, non-severe impairments, singularly or in combination, *cannot* equal a listing. Plaintiff notes that the TRC form completed by the SAMCs indicates that there was insufficient medical evidence of record. *See* Tr. 266. Plaintiff argues that this demonstrates that the SAMCs concluded that they had insufficient medical evidence to directly address whether Plaintiff's impairments were medically equivalent to a listing. Pl. Brief at 13. However, the initial denial notes that "the evidence we now have is not sufficient to show that your conditions were disabling prior to 12-31-00 when your period of coverage ended." Tr. 41. The

decision on reconsideration similarly indicates that the evidence the agency had was "not sufficient to show that [claimant's] condition is disabling." Tr. 34. The evidence does not demonstrate that the SAMC on reconsideration found that there was insufficient evidence to determine whether Plaintiff's impairments were disabling. The situation raised in this case is analogous to that addressed by the Eighth Circuit in *Jones v. Barnhart*. *See Jones v. Barnhart,* 315 F.3d 974, 978 (8th Cir. 2003). In that case, the Eighth Circuit found that the statement of a consulting physician indicating that the claimant would need to have an RFC evaluation was sufficient to satisfy the requirements of SSR 96-6p. *Id*. The Court noted that "[w]hile the consulting physician did not explicitly state that [the claimant's] condition was not equivalent to a listing, she did state that he needed to have an RFC evaluation," which "is only required when the claimant's condition is determined in step three not to meet or equal a listed impairment." *Id*. The implicit indication of a finding of nonequivalency was thus found sufficient. *Id*.

SSR 96-6p provides that when an ALJ finds that an individual's impairments are not equivalent in severity to any listing in the Listing of Impairments, "the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant." The findings by the SAMC of nondisability due to nonseverity precluded an equivalency finding, given that the sequential evaluation process ended when they found that Plaintiff's impairments were not severe. SSR 96-6p provides that the ALJ or Appeals Council must obtain an updated medical opinion from a medical expert in two circumstances: first, when no additional medical evidence is received, but in the opinion of the ALJ or Appeals Council the medical evidence in the record suggests that a judgment of equivalence may be reasonable; or second, where additional medical evidence is received that the ALJ or Appeals Council believe may change the opinions of the SAMCs as to medical equivalence. The record does not demonstrate that either of the two circumstances requiring an updated medical expert opinion arose in this case.

Finally, I note that Plaintiff has failed to demonstrate any prejudice from the alleged failure to obtain the opinion of an SAMC or medical expert as to medical equivalence. Plaintiff argues that this failure constitutes error as a matter of law. The claimant has the burden of proving that his impairment or combination of impairments meets or equals the listings. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs, and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530(1990). To equal a listing, the claimant's medical finding must be "at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b). "The claimant must provide medical findings that support each of the criteria for the equivalent impairment determination." *Selders*, 914 F.2d at 619 (citing 20 C.F.R. § 404.1526(a)). To the extent that Plaintiff alleges that the ALJ erred as a matter of law by failing to support his opinion of medical equivalence with the opinion of an SAMC or other program physician as required by SSR 96-6p, the court notes that Social Security rulings constitute internal interpretations and general policy statements which do not have the force and effect of law. *Morton v. Ruiz*, 415 U.S. 199, 237 (1974). While this court certainly considers such rulings, they are not binding on courts. *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). Plaintiff must demonstrate prejudice arising from the alleged error to be entitled to relief. *Hall*, 660 F.2d at 119. Plaintiff has failed to demonstrate that the record contains medical findings to support a finding of medical equivalence. Plaintiff's allegations thus fail to demonstrate prejudice from the alleged error. Therefore, I find that the SSA-831 forms signed by the SAMCs were sufficient to meet the requirements of SSR 96-6p. I alternatively find that if these were not sufficient, Plaintiff has failed to demonstrate prejudice and is thus not entitled to a remand on this basis.

**B.     Whether the ALJ erred in finding at step 5 that Plaintiff can perform other work which exists in significant numbers in the national economy.**

Plaintiff argues that the ALJ's step 5 finding is not supported by substantial vocational evidence. Plaintiff alleges that the ALJ erred by relying upon the testimony of the VE where such testimony was unreliable and insufficient to constitute substantial evidence to carry the Commissioner's burden at step 5 because the VE did not offer facts or data upon which to base his opinion.

A vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

Plaintiff notes that her representative questioned the VE regarding the source of his information. Tr. 332-33. The VE testified that the source of his information was the *Dictionary of Occupational Titles* ("DOT")[3]. Tr. 333. The VE provided a DOT code, 249.366.010. *Id.* The VE testified that the job of photo counter clerk was an unskilled job at the light exertional level with an SVP of two and a reasoning level of two. *Id.* The VE testified that the duties would include customer service, some sporadic cashiering duties, and the use of an automated machine to process the film. Tr. 333-34. Plaintiff argues that the DOT does not address whether its listed occupations

---

[3]     *See* United States Dept. of Labor, Employment & Training Admin., *Dictionary of Occupational Titles* (4th ed. 1991)("DOT").

allow the opportunity to alternate between sitting and standing at frequent intervals, a limitation which the ALJ incorporated into the hypothetical question posed to the VE.

In *Carey v. Apfel,* the Fifth Circuit addressed a case where the claimant argued that the testimony of the VE, which the ALJ relied upon, conflicted with the *Dictionary of Occupational Titles*. *See Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000). The Fifth Circuit noted that "'[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed'" and found that "DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id.* at 145 (internal citations omitted)(emphasis added). The court indicated its agreement with the majority of the circuits that the ALJ may rely upon the vocational expert's testimony, provided that the record reflects an adequate basis for doing so. *Id.* In this matter, there is no direct conflict with the DOT. Rather, the VE testified about job requirements which are not a part of the DOT job descriptions. While *Carey* deals with a conflict between the testimony of the VE and the DOT, the finding that an ALJ may rely upon VE testimony with adequate support in the record is instructive in this matter.

Plaintiff argues that there is not an adequate basis in the record for relying upon the testimony of the VE. Clearly, an ALJ may not rely on evidence provided by a VE if that evidence is based on underlying assumptions or definitions that are inconsistent with the agency's regulatory policies or definitions – such as exertional level, skill level, and transferability of skills. *See* Soc. Sec. Ruling 00-4p (December 4, 2000)("SSR 00-4p"). This Ruling notes that neither the DOT nor evidence from a VE "trumps" the other. *Id.* Rather, "[t]he DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." *Id.*

Plaintiff's representative questioned the VE about the source he was using to describe the job identified. Tr. 332. The representative also questioned the VE about the skill level, exertional level, reasoning and SVP requirements, and duties of the identified job. Tr. 333. Like the vocational expert in *Vaughan*, the VE in this case relied on his expertise to arrive at the conclusions that he gave to the ALJ, and he explained how he arrived at his conclusions. *Vaughan*, 58 F.3d at 132. As noted in SSR 00-4p, evidence from the VE can include information *not listed* in the DOT and may be provided based on the VE's own expertise and experience. *See* SSR 00-40. A VE is a reliable source of occupational information who may be able to provide more specific information about jobs or occupations than the DOT. *Id*. As noted above, there was no conflict between the testimony of the VE and the DOT requiring the ALJ to further inquire or investigate. I find that the ALJ did not err in relying upon the testimony of the VE, and such testimony constituted substantial evidence in support of the ALJ's finding at step 5 that Plaintiff can perform other work which exists in significant numbers in the national economy.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District

Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 28th day of February, 2006.

_____
**PHILIP R. LANE**
**UNITED   STATES   MAGISTRATE   JUDGE**